## THE NEGAUNEE.

*(District Court, N. D. Illinois. July 14, 1884.)*

1. ADMIRALTY—COLLISION—PLEADING—EVIDENCE—BURDEN OF PROOF.
    The failure of a respondent to allege, as a defense, that the collision was an inevitable accident, does not aid the case of the libelant. The libelant's case depends upon his sustaining the main allegations in his libel, to the effect that the collision was caused by the fault of the respondent, and if he fails of his proof in that particular he cannot recover.

2. SAME—UNEXPECTED APPROACH OF VESSELS—NAVIGATION LAWS.
    In cases where two vessels approach each other unexpectedly in very dangerous proximity, the guide for their action should be rule 24 of the navigation laws, (Rev. St. 4233,) which provides that "due regard should be had to all the dangers of navigation, and to any special circumstances which may exist in any particular case, rendering a departure from the general rules necessary in order to avoid immediate danger.

3. SAME—FOG-HORNS—PROOF—FAILURE TO HEAR.
    The testimony being that the fog-horn was regularly and properly blown by the vessel complained against, the proof that it was not heard by the vessel complaining does not, under the circumstances, overthrow that testimony. The proof that the horns were properly blown on each vessel, and yet not heard

on the other, simply shows that the best-known precautions which experience has suggested or the law provided, may at times fail of securing safety.

4. SAME—NO FAULT WHEN RULES COMPLIED WITH.

If the officers and crew of a vessel comply with all the rules which circumstances require them to observe, they cannot be held in fault in the event of a collision. *The Rhode Island*, 17 FED. REP. 554, distinguished.

In Admiralty.

*Mix, Soble & White*, (of Cleveland, Ohio,) and *W. H. Condon*, for respondent.

*H. W. Magee* and *C. E. Kremer*, for libelant.

BLODGETT, J. The libelant in this case, as owner of the schooner E. M. Portch, seeks to recover the damages sustained by his vessel by a collision with the schooner Negaunee. The collision occurred on the waters of Lake Michigan, nearly abreast of Ahnapee, and 12 or 15 miles from the west shore of the lake, and between the hours of 7 and 8 o'clock in the morning of September 19, 1880. The Negaunee is a large three-masted schooner, and was laden with over 1,100 tons of coal, bound from Buffalo to the port of Milwaukee. The Portch was also a large three-masted schooner, loaded with cedar ties and posts, and bound from Alpena to Chicago. The libel alleges that the collision was occasioned wholly by the fault and negligence of those in charge of the Negaunee, and the answer denies that there was any negligence on the part of the Negaunee.

The proof shows, and it is admitted, that at the time of the collision, and for several hours before, a thick wet fog had prevailed. The wind was about S. The course of the Negaunee was S. W. by S., and the course of the Portch was S. E. ½ S. The Negaunee was carrying all her sails, and the Portch all her lower sails, but not her gaff nor jib topsails, but she had been carrying all or part of her upper sails until just before the collision. The speed of each was between four and five miles an hour, as estimated by the judgment of their respective officers and crews. The two vessels had been in company, or in sight of each other, during the day before, and from the fact that they had made the same distance during the night, I conclude that they had run at about the same rate of speed, although it is probable that the Negaunee may have carried more sail, as her cargo was heavier than that of the Portch, and she was settled deeper into the water, and probably needed to carry more sails than the Portch to make the same speed.

I conclude from the proof, without now taking time to discuss it, that both vessels had competent lookouts, and that both were sounding their fog-horns at the regular intervals required by the sailing rules. The Negaunee, being on the port tack, was sounding two blasts of her horn in quick succession, at intervals of not more than two minutes, and the Portch, being on the starboard tack, was sounding one blast of her horn at intervals of not more than two minutes. The concurrent proof from witnesses on the decks of both vessels is

that neither heard the horn of the other, and that the vessels were not over 150 feet apart when they sighted each other, and I am satisfied that they sighted each other about the same instant. The witnesses also agree that when they sighted each other a collision was inevitable. At this time the Portch was pointing nearly to the fore-rigging of the Negaunee, and the wheel of the Portch, by order of her captain, was put hard up, and the sheets of her after sails slacked off, by which maneuver it was intended to swing the bow of the Portch off with the wind, and, if possible, carry her astern of the Negaunee, while the Negaunee's wheel was put hard down at about the same time, for the purpose of bringing her head up into the wind. The expedients resorted to on both vessels were unavailing, and the bow of the Portch struck the Negaunee near the Negaunee's mizzen rigging, tearing out her bowsprit and breaking in her bows, but doing comparatively little injury to the Negaunee. As already said, it is agreed by the officers and crew of both vessels that when each became aware of the proximity of the other a collision was inevitable, and the most that was expected from the maneuvers adopted was to mitigate the damage.

It is urged on the part of the Portch that it was a fault on the part of the master of the Negaunee to put his wheel hard down and come up into the wind, as he thereby lost some of his headway and threw the stern of his vessel towards the Portch; while it is contended on the part of the Negaunee that her captain did the right thing, and that the master of the Portch was at fault in putting his wheel hard up; that if he had put his wheel hard down the Portch would have swung up into the wind, and the two vessels would have come together by the bows, where they are strongest, and would have glanced off from each other. Experienced practical navigators have testified on both sides, and seem about divided equally in opinion as to whether the maneuver attempted by the Portch or that attempted by the Negaunee was the best seamanship. There is, however, good authority in support of the action of the master of the Negaunee.

In the Kedge-Anchor, a treatise on navigation, used as a text-book at the United States naval academy, the following rule is stated:

Rule 404, (page 221.) "In cases of surprise and danger, from the accidental meeting of two ships on opposite tacks in the night, it too often happens that officers are more apt to give orders to *the stranger* than to take any measure of precaution themselves, such as hailing to put the helm up or down, and to clear them, when they may be as much in fault, and possess the same means of extricating themselves from the difficulty. In situations of this sort, it is much better that both parties should put their *helms down* rather than *up;* the ships will approach each other for a time, but will diminish in velocity, and afterwards separate."

I do not care to discuss the question of nautical skill here raised, as I think there can be no doubt that the maneuvers resorted to on each vessel must be deemed to have been adopted *in extremis,* and the master of neither is to be charged with fault for what he did un-

der the circumstances. One cannot say from the proof, with any degree of certainty, that a collision would have been averted, or the consequences any less serious, if different maneuvers had been made or attempted.

But it is urged that the Negaunee, being on the port tack, was, under the seventeenth rule of section 4233, Rev. St., required to keep out of the way of the Portch; that the Portch had the right of way and was to hold her course, and it was the Negaunee's duty to give the way or turn out; and this rule would be aptly invoked if the proof showed that those in charge of the Negaunee had sufficient notice of the proximity of the Portch to enable them to execute the proper movements to give the Portch the way. The proof, however, shows, as I have already said, that at the time the Negaunee's officers were apprised of the presence of the Portch, they were so near together and a collision so imminent that it was futile to attempt to keep out of the way; and it seems to me that, under the circumstances, rule 17 was inoperative, and rule 24 of the same section, which requires that "due regard must be had to all the dangers of navigation, and to any special circumstances which may exist in any particular case rendering a departure from the general rules necessary in order to avoid immediate danger," became the guide of both parties; that is, that each party, under an unexpected impending peril, must do what he can promptly to avoid it.

I can see no reason for concluding, from the proof in the case, that the lookout of the Negaunee was negligent or incompetent. It is true, I think, if the testimony is to be believed,—and it is not incredible,—that these two vessels found themselves suddenly looming up out of this dense fog within 150 feet of each other, and without either having heard the fog-horn of the other, although the horns on each may have been sounded at the proper intervals. It must be remembered that the fog was wet and dense, the wind from the south, about a five-knot breeze, and the courses of the vessels such that the wind would not aid in transmitting sounds from one to the other. They were approaching each other at a combined speed of eight to ten miles an hour, and if it so happened that their horns were blown simultaneously two minutes before they sighted each other, there was time for them to have passed over nearly a third of a mile after the last blast was given on the horn of either vessel. When you add to this the fact that the horn of the Portch was blown upon her windward side, so that her sails would tend to interrupt or break the waves of sound from her deck, I think it not unreasonable to conclude that the proper fog signals were given from each vessel, and yet were not heard on the other.

It is further urged that both these vessels were going too fast, and that, this being a mutual fault, makes this a proper case for dividing the damages. As has been before said, the proof shows the speed of the two vessels to have been substantially the same. They were near

enough together for company when the darkness of the night before shut in upon them, and too near for safety when they first saw each other in the morning. Being of nearly the same size, and both loaded, they had been so navigated during the hours of the night as to make the same progress towards their port of destination. The proof as to the distance they had thus passed over during the night, as well as the velocity of the wind, all concurs, I think, in showing that their speed at the time of the collision was not to exceed four and a half miles an hour, and the proof shows this was no more than a sufficient speed to secure steerage-way and prevent drifting to leeward. · Indeed, it seems to me difficult, if not impossible, to demonstrate that the rate of speed at which these vessels were sailing contributed to the danger of either. It so happened in this case that these two vessels, running at substantially the same rate of speed, came together. A little more speed on one or less on the other would have saved the collision. But upon what basis or *data* could any navigator have calculated that he increased his own safety or that of other vessels· he was liable to meet by going at a lower rate of speed? The Negaunee might have been a greater peril to herself, or any other vessel she was liable to encounter, if she had lain still, if that were possible, during such a fog.

My attention is called by counsel to the case of *The Rhode Island,* 17 FED. REP. 554, where it was held that seven miles an hour by a sail-vessel in a fog was too high a rate of speed; but in that case the sail-vessel was running in a narrow passage-way, on pilotage ground, where her officers knew she was liable to encounter other vessels, with very little room in which to maneuver, and has many other facts to distinguish it from this.

From the proof in this case, then, I ·cannot see that any fault for this collision can be properly laid to the crew of the Negaunee. The testimony is that her horn was regularly and properly blown. The proof that it was not heard on the Portch does not, under the circumstances, overthrow this proof from the Negaunee. The proof that the horns were properly blown on each vessel and yet not heard on the other, simply shows that the best-known precautions which experience has suggested or the law provided may at times fail of securing safety. If the officers and crew of the Negaunee complied with all the rules which the circumstances required them to observe, they certainly cannot be held to be in fault; and I am of opinion that the proof does not show any failure or neglect on the part of those in charge of the Negaunee which should make her liable for the damage sustained by the Portch.

It is objected that the answer of the respondent does not allege, as a defense in this case, that the collision was an inevitable accident; but I do not understand that it was necessary to make such an allegation. The libelant's case depends upon sustaining the main allegation in his libel, to the effect that the collision was caused by the

fault of the Negaunee, and if he fails of his proof in that particular he cannot recover. The defense does not rest upon the fact that the collision was an inevitable accident, but upon the question whether it resulted from the fault of the Negaunee.

The libel is dismissed for want of equity, at costs of libelant.